# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No: 18-cv-1744 ) Magistrate Judge Susan E. Cox |
| HIBACHI SEAFOOD BUFFET H&Z, INC. D/B/A ALLSTYLE BUFFET, LI GUANG ZHENG, and LI YUN HUANG, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed below, Plaintiff's Motions for Summary Judgment [Dkt. 63] is denied as to Defendant Li Yun Huang's status as an "employer" under the Fair Labor Standards Act, and granted as unopposed to all other issues raised in the motion. Defendants' Motion for Summary Judgment [68] denied.

## BACKGROUND

Defendants Li Guang Zheng ("Zheng") and Li Yun Huang ("Huang") are husband and wife. (Dkt. 70 at ¶ 1.) Defendant Hibachi Seafood Buffet H&Z, Inc. ("Hibachi") is a corporation that owns and operates a restaurant called All Style Buffet ("All Style"). (Dkt. 70 at ¶ 14.) The parties do not agree on who owned Hibachi. (Dkt. 70 at ¶ 13.) At his deposition, Zheng testified that Huang was the owner of Hibachi, but he subsequently disavowed that testimony via affidavit, claiming to have confused the concept of owner and officer. (*Compare* Dkt. 68, Ex. A, Zheng Dep. 24:3-10, *with* Dkt. 68, Ex. C, Zheng Aff. at ¶¶ 2, 13.) Zheng's affidavit states that he has always been the "sole owner" of Hibachi. (Zheng Aff. at ¶ 2.) At her deposition, Huang stated that she did not know who was the owner of Hibachi. (Dkt. 68, Ex. B, Huang Dep. 26:9-15).

According to Hibachi's 2017 tax returns, Huang owned 100% of the voting stock in Hibachi. (Dkt. 70-1.) Huang testified that she had no role in filing Hibachi's taxes. (Huang Dep. 33:22-34:1.)

There is also disagreement on Huang's operational role at the restaurant. At his deposition, Zheng testified that he was solely responsible for hiring, paying, scheduling, training, and firing employees at All Style, and never delegated those responsibilities to anyone else. (Zheng Dep. 74:10-76:18.) He does not consider anyone to be second in command at the restaurant. (Zheng Dep. 72:22-24.) He noted that he would travel to China every year, for somewhere between 10 and 20 days. (Zheng Dep. 71:5-10.) When he travels to China, nobody is left in charge; he has "made arrangements well that everybody knows what they need to do," and any employee with a last-minute issue that needs resolution will call Zheng while he is in China. (Zheng Dep. 71:23-73:21.) As for payroll, Zheng testified that his employees are paid monthly at the beginning of the month, and that he would arrange his trips to China to avoid coinciding with his employees' payday. (Zheng Dep. 72:19-73:13.)

Huang's deposition corroborated many of these facts. Huang testified that Zheng supervised employees, managed inventory, and checked quality of the ingredients. (Huang Dep. 18:24-19:9.) Huang's normal role at the restaurant was to monitor the buffet counter and call into the kitchen to let the cooks know to prepare more of any dish that was getting low or had been finished. (Huang Dep. 12:12-13:20.) She testified that when Zheng would take his trips to China, Huang was given keys to the restaurant to open and close, but Huang stated that no particular worker was in charge when Zheng was in China. (Huang Dep. 18:1-13.) Although it appears that the restaurant opened at a set time every day, decisions on when to close the restaurant were made collectively by the employees. (Huang Dep. 23:3-21.) Nobody was responsible for making sure that the employees adequately performed their duties when Zheng was gone, and Huang did not

know if anyone monitored the employees' breaks to ensure that they were not excessive. (Huang Dep. 20:13-20.) She further testified that when Zheng was away from the restaurant, it would fall to the cooks and other workers at the restaurant to do quality control on ingredients delivered to the restaurant and handle returns. (Huang Dep. 19:10-20:12.) Huang also asserted that no employee of All Style has ever asked her for permission to miss work, and that Huang has never paid any employee, given any employee a raise, given any instructions to an employee, or recommended that All Style hire any employee. (Huang Dep. 24:14-25:8, 34:14-16.)

Huang is the sole owner of a home on South Archer Avenue in Chicago (the "South Archer Property"). (Dkt. 70 at ¶ 4.) She made the down payment on the property with money she earned and saved, and claims to have paid off the mortgage in full with money she earned. (Dkt. 70 at ¶¶ 5-7.) The South Archer Property consists of three apartment units. (Zheng Dep. 129:3-130:5.) Huang occupies the middle unit, and the other units are occupied by employees who work at All Style. (Huang Dep. 6:14-17, 29:12-16.) Zheng has not lived with Huang at the South Archer Property in the last six or seven years, and Huang occasionally shares her apartment with employees of All Style. (Dkt. 70 at ¶ 2; Huang Dep at 31:9-15.) Defendants claimed a wage credit against their employees' earnings for lodging provided to those employees at the South Archer Property. (Dkt. 66 at ¶ 18.) Huang testified that she has no say in who lives in the other units of the South Archer Property, and receives no compensation for allowing employees to reside there, but does so in order to support her husband's career. (Huang Dep. 31:24-32:21.)

Plaintiff's version of the facts is very different. According to the affidavit of Eduardo Hernandez, an investigator with the Chicago District Office of the Wage and Hour Division of the U.S. Department of Labor, several unnamed employees he interviewed "confirmed that Huang gave them 'orders' at the restaurant, and an employee also told [Hernandez] Defendant Huang

pays employees when Defendant Zheng is not available to do so." (Dkt. 66-10 at ¶ 7.) Hernandez further attested that Yulin Zheng, who is the son of Defendants Zheng and Huang and also an employee of All Style, stated that both Huang and Zheng "act as supervisors at the AllStyle Buffet restaurant."[1] (Dkt. 66-10 at ¶ 7.)

From the parties' submissions, it appears the only contested issue is whether Huang qualifies as an employer under the Fair Labor Standards Act ("FLSA"). It the brief in response to Plaintiff's Partial Motion for Summary Judgment, Defendants Hibachi and Zheng stated that they "have chosen not to contest the Secretary's Partial Motion for Summary Judgment, but are reserving the right to contest the amount of damages." (Dkt. 79 at 1.) "Accordingly, the only issue now before the Court is whether Ms. Huang is an employer under the Fair Labor Standards Act." (Dkt. 79 at 1.) As such, the Court grants Plaintiff's motion for summary judgment on the following issues: 1) Hibachi is a covered "enterprise engaged in commerce or in the production of good for commerce" under the FLSA; 2) Zheng is an "employer" under the FLSA; 3) Defendants violated the FLSA overtime provisions by failing to compensate their employees at least one and one-half times their regular rates for employment in excess of forty hours per week and are jointly and severally liable for payment of back wages;[2] 4) Defendants' violations of the overtime provisions of the FLSA were willful; 5) Defendants violated the FLSA recordkeeping provisions, 6) Defendants' violations of the recordkeeping provisions of the FLSA were willful; 7) Defendants are not entitled to any credit for tips given to employees by customers, or for providing meals,

---

[1] Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." In order to be admissible under the Federal Rules of Evidence, evidence must be based on a proper factual foundation and personal knowledge. The Court finds that the cited portions of Mr. Hernandez's affidavits would likely be admissible at trial. The statements he relies on would not be hearsay, pursuant to Federal Rule of Evidence 801(d)(2)(D), and the remainder of the statements are based on his personal knowledge.

[2] If Huang is found to be an employer under the FLSA, these findings would apply with equal force to her, as Defendants have only challenged her status as an employer.

lodging, and transport to employees; 8) Defendants violated the FLSA minimum wage provisions as to employee Margarita Baltazar; 9) Defendants are jointly and severally liable for a sum of unpaid minimum and overtime wages; 10) Defendants are jointly and severally liable for a sum of liquidated damages equal to the sum of back wages due; 11) Plaintiff is entitled to an injunction restraining Defendants from prospectively violating the FLSA's provisions. (Dkt. 63.)

## STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette Indiana*, 359 F.3d 925, 928 (7th Cir. 2004). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Cellotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an ele ment essential to that party's case, and on which the party will bear the burden of proof at trial." *Cellotex,* 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

**DISCUSSION**

On the record before the Court, there is a genuine issue of material fact regarding Huang's status as an "employer" under the FLSA, and both parties' cross-motions for summary judgment are denied on this issue. The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Recognizing that the statute's definition is both circular and extremely broad, courts have come up with various tests to examine whether individuals have FLSA liability as an employer. *See Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 696 (N.D. Ill. 2015) (noting that a literal reading of the FLSA would mean "the lowest level supervisor would potentially be on the hook for substantial money damages, costs, and fees"). "In the absence of a meaningful statutory definition, and consistent with Supreme Court guidance to construe the terms 'employer' and 'employee' broadly, the Seventh Circuit has concluded that courts must examine the economic reality of the working relationship . . . ." *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121 (N.D. Ill. 2017). The "economic reality" test does not turn on formalistic labels or common law agency concepts, but instead focuses on the "totality of the circumstances" surrounding the relationship. *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 785 (N.D. Ill. 2011). Many courts consider the following factors in determining whether there is an employer-employee relationship: 1) the power to hire and fire the employee; 2) supervision and control over the employee's work schedule or conditions of employment; 3) determination of the rate and method of payment; and 4) maintenance of employment records. *Ivery*, 280 F. Supp. 3d at 1128. However, the Seventh Circuit has stressed that while these factors are relevant to the analysis, they are not the only relevant factors or even the most important. *Id.* (citing *Moldenhauer v. Tazewell-Pekin Consol. Comms. Ctr.*, 536 F.3d 640, 643 (7th Cir. 2008)). An employee may have more than one employer;

"while the joint employer analysis turns on the specific facts of each case, the Seventh Circuit has emphasized that 'for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee.'" *Id.* (citing *Moldenhauer*, 536 F. 3d at 644).

In this case there are two competing versions of facts, which suggests that neither party can be granted summary judgment on the issue of Huang's status as an "employer" under the FLSA. According to the Defendants, Huang had no control over the working conditions of the employees at Hibachi. Both Zheng and Huang testified that Zheng was solely responsible for hiring and firing employees, controlling schedules, and making payments. When Zheng would leave for his trips to China, he would make arrangements ahead of time to pay the employees, and the employees would call him if they had any issues that needed resolution. Although Huang would open and close the restaurant, her testimony did not suggest that she was responsible for deciding when to open or close; the opening hours were already set, and any decision to close early was made collectively when there were not enough customers to justify staying open. With respect to Plaintiff's motion, the Court must view the facts in the light most favorable to Defendants and draw all inferences in their favor. Having done so, the Court believes a reasonable juror could conclude that Huang was no more than a rank-and-file employee of All Style, and that the totality of the circumstances do not suggest that Huang had the power to control the working conditions of the employees at All Style. Even if a juror were to find that she was an owner of the corporate defendant Hibachi, that alone would not necessarily be sufficient to support a finding that she was an employer. *See Cardenas v. Grozdic,* 67 F. Supp. 3d 917, 923 (N.D. Ill. 2014) ("the mere facts of stock ownership or officer status in an entity that employed the complaining employee" is not "enough to deem an individual as an employer"). As such, the Court denies Plaintiff's motion on this issue.

Similarly, Defendants' motion for summary judgment is denied because there are facts in the record that would permit a reasonable juror to find that Huang was, indeed, an employer. For example, there is the evidence from Eduardo Hernandez's investigation that Huang's son and other employees at All Style stated that Huang had a supervisory role that restaurant, giving orders and paying the employees when Zheng was unavailable to do so. Moreover, a juror could find that housing the employees, and opening and closing the restaurant when Zheng was in China, are sufficient to confer employer status on Huang. Viewing the facts and drawing the inferences in favor of the Plaintiff, as the Court must do on Defendants' cross-motion for summary judgment, the Court believes that a reasonable juror could find that Huang was an employer and denies Defendants' motion.

## **CONCLUSION**

For the reasons discussed above, Plaintiff's Motion for Summary Judgment [Dkt. 63] is denied as to Defendant Li Yun Huang's status as an "employer" under the Fair Labor Standards Act, and granted as unopposed to all other issues raised in the motion. Defendants' Motion for Summary Judgment [68] denied.

**ENTERED:**

Date:  3/16/2020

_____
U.S. Magistrate Judge, Susan E. Cox