UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No: 18-cv-1744<br>) Magistrate Judge Susan E. Cox |
| HIBACHI SEAFOOD BUFFET H&Z, INC. D/B/A ALLSTYLE BUFFET, LI GUANG ZHENG, and LI YUN HUANG, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed below, the Secretary of Labor's Motion to Proceed to Trial [116] is granted. A telephonic status hearing is set for May 17, 2021 at 2:00 p.m. Call in information is 888-684-8852 and the passcode is 1664086. Counsel shall dial in to the conference call number 5-10 minutes before the hearing begins and mute their microphones until their case is called.

## BACKGROUND

Defendants Li Guang Zheng ("Zheng") and Li Yun Huang ("Huang") are husband and wife.[1] Defendant Hibachi Seafood Buffet H&Z, Inc. ("Hibachi") is a corporation that owns and operates a restaurant called All Style Buffet. Plaintiff Martin J. Walsh, Secretary of Labor for the United States Department of Labor ("Plaintiff" or "DOL"), initiated the instant action alleging Defendants violated the overtime and minimum wage provisions of the Fair Labor Standards Act ("FLSA"), and sought injunctive relieve under § 17 of the FLSA and liquidated damages pursuant

---

[1] This Court produced a more fulsome recital of the facts in its previous opinion on the parties' cross-motions for summary judgment. [Dkt. 87.] The Court here only discusses the facts relevant to the issue currently before it.

1

to § 16(c) of the FLSA. [Dkt. 38.] The parties eventually filed cross-motions for summary judgment. However, Defendants did not oppose the majority of the issues raised, and the Court entered summary judgment finding the following: 1) Hibachi is a covered "enterprise engaged in commerce or in the production of good for commerce" under the FLSA; 2) Zheng is an "employer" under the FLSA; 3) Defendants violated the FLSA overtime provisions by failing to compensate their employees at least one and one-half times their regular rates for employment in excess of forty hours per week and are jointly and severally liable for payment of back wages; 4) Defendants' violations of the overtime provisions of the FLSA were willful; 5) Defendants violated the FLSA recordkeeping provisions, 6) Defendants' violations of the recordkeeping provisions of the FLSA were willful; 7) Defendants are not entitled to any credit for tips given to employees by customers, or for providing meals, lodging, and transport to employees; 8) Defendants violated the FLSA minimum wage provisions as to employee Margarita Baltazar; 9) Defendants are jointly and severally liable for a sum of unpaid minimum and overtime wages; 10) Defendants are jointly and severally liable for a sum of liquidated damages equal to the sum of back wages due; and 11) Plaintiff is entitled to an injunction restraining Defendants from prospectively violating the FLSA's provisions. The only remaining issues before this Court were Huang's status as an employer under the FLSA and the amount of liquidated damages; the Court denied both motions for summary judgment and the case was to proceed to trial on the issue of Huang's status and the amount of liquidated damages.[2]

On March 31, Zheng and Huang filed for bankruptcy, and it is their position that this case should be stayed automatically pursuant to 11 U.S.C. § 362(a). However, the DOL moved to proceed notwithstanding the bankruptcy, contending that this matter fits into the "police or

---

[2] The parties unsuccessfully attempted to mediate this case before Magistrate Judge Jantz following this Court's order on the cross-motions for summary judgment.

regulatory power" exception to the automatic bankruptcy stay, under 11 U.S.C. § 362(b)(4). In their response to that motion, Huang and Zheng withdrew "all objections to the injunctive relief sought by the Plaintiff and consent to the entry of the injunctive relief against them," but reserved the right to all bankruptcy protections related to the monetary claims the DOL brought against them. [Dkt. 122 at ¶ 6.] The corporate defendant Hibachi, which did not file for bankruptcy, withdrew "all objections to the injunctive and monetary relief and consents to the entry of the injunctive relief against it and the entry of money judgment against it in the amount" of $798,905.84. [Dkt. 122 at ¶¶ 8-9.] Defendants argue these stipulations leave only monetary issues left to be decided, which would render the purpose of the DOL's suit purely pecuniary. [Dkt. 122 at ¶ 13.] Plaintiff asserts that it has valid public policy reasons for continuing with the suit and that it is pursuing its regulatory and police functions. For the reasons discussed more fully below, the Court holds that this suit is exempt from the automatic stay, and the case should go forward to trial.

## DISCUSSION

When a party files for bankruptcy, the Bankruptcy Code mandates that all other litigation is automatically stayed, 11 U.S.C. § 362(a), in order "to facilitate the orderly administration of the debtor's estate." *Brock v. Rusco Industries, Inc.*, 842 F.2d 270, 273 (11th Cir.1988) (quoting *Donovan v. TMC Industries, Ltd.,* 20 B.R. 997, 1001 (N.D.Ga.1982)). The automatic stay "preserve[s] what remains of the debtor's insolvent estate and…provide[s] for a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Holtkamp v. Littlefield*, 669 F.2d 505, 508 (7th Cir.1982). However, under 11 U.S.C. § 362(b)(4), the automatic stay does not apply to the "commencement

or continuation of an action or proceeding by a governmental unit…to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power."

There are two tests courts employ to determine whether a given action falls within a government agency's police and regulatory powers – the "pecuniary purpose" test and the "public policy" test. *See Chao v. BDK Industries, LLC*, 296 B.R. 165, 167 (C.D. Ill. 2003) (citing *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 384 (6th Cir.2001)). The Sixth Circuit has explained the tests as follows:

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

*Hospital Staffing.*, 270 F.3d at 385-86 (quoting *Word v. Commerce Oil Co. (In re Commerce Oil Co.)*, 847 F.2d 291, 295 (6th Cir.1988)). Of course, there is not often a bright line between an action pursued by a government agency for private, pecuniary interests or public policy reasons. It is almost always a blend of both:

> When the private interests do not significantly outweigh the public benefit from enforcement, courts should defer to the legislature's decision to vest enforcement authority in the executive and recognize such actions as within such governmental unit's police and regulatory power, as that term is used in § 362(b)(4). When an action substantially adjudicates private rights and only incidentally (sic) serves the public interest, courts should regard the suit as outside the police power exception. This is especially the case when a successful suit would result in a pecuniary advantage to certain

> private parties vis-a-vis other creditors of the estate, contrary to the
> Bankruptcy Code's priorities.

*BDK Indus.*, 296 B.R. at 168 (internal citations and quotations omitted). Courts regularly hold that enforcing the FLSA's minimum wage and overtime provisions falls within the police and regulatory power exception to the automatic stay. *Eddleman v. United States Dept. of Labor*, 923 F.2d 782, 790-91 (10th Cir. 1991); *Donovan v. Timbers of Woodstock Restaurant, Inc.*, 19 B.R. 629, 630 (N.D. Ill. 1981) ("This Court finds FLSA enforcement proceedings plainly constitute an exercise of 'police or regulatory power' and are therefore within the exception to the automatic stay provision"); *BDK Indus.*, 296 B.R. at 168; *Solis v. SCA Restaurant Corp.*, 463 B.R. 248, 257 (E.D.N.Y. 2011) ("In sum, the DOL brings this action under Sections 16(c) and 17 of the FLSA to serve the valid public policy purposes of enjoining further violations of the FLSA, protecting labor conditions, preventing unfair competition in the labor market, and deterring unlawful behavior by others. Successful prosecution of this action will not create a pecuniary interest for the government in the debtor's property, nor will it result in a pecuniary advantage to the government over other creditors. Accordingly, this action is exempt from the automatic stay under § 362(b)(4), the police and regulatory power exemption").

In this case, the government's private pecuniary interests in seeking liquidated damages do not substantially outweigh the public benefit from enforcing the FLSA's minimum wage and overtime provisions. Here, the government has a strong public interest in protecting workers and preventing unfair competition in the labor market from employers paying substandard wages. *See BDK Indus.*, 296 B.R. at 168. Meanwhile, the private interest is limited. Although the DOL might obtain a monetary judgment in this case, the enforcement of that judgment would be conducted in the bankruptcy proceedings. *See SCA Restaurant Corp.*, 463 B.R. at 253-54 ("Should the government succeed in winning a monetary judgment against defendants, enforcement of the

money judgment will take place in bankruptcy court"). As such, the pecuniary interest in the case is secondary, and the DOL would not be given priority to the bankruptcy estate's funds in a way that would disadvantage other creditors. Therefore, this suit satisfies the pecuniary interest test.

Defendants argue that their willingness to stipulate to the injunctive relief and the amount of liquidated damages leaves only pecuniary issues to be adjudicated and demonstrates that this case is being pursued only for private purposes. However, the Court believes the DOL's insistence on pursuing this matter despite the stipulations Defendant offered demonstrates its seriousness in pursuing public policy goals. If the DOL's primary concern was winning and enforcing a monetary judgment, a stipulation by the corporate defendant – which is not yet in bankruptcy and could have the judgment enforced against it – to a judgment over $700,000 would certainly achieve that goal. Instead, the DOL appears to be driven by its desire to ensure that violators of the FLSA do not go unpunished in order to effectuate the stated public policy goals of the FLSA. In fact, the only issue left to litigate is Huang's status as an employer, which suggests that the DOL's main objective is to hold individuals accountable who violated the FLSA rather than collect as much money as possible. Such a goal is squarely within the police and regulatory functions of the DOL and exempt from the automatic stay. The Court rejects Defendants' argument that the only remaining issues are private and pecuniary.

Similarly, this suit passes the public policy test. Congress articulated the public purpose of the FLSA as preventing "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). While the Court recognizes that the DOL's claim for liquidated damages advances the private rights of the allegedly underpaid employees, the Court does not believe that is the primary animating purpose of this case; as in *BDK*, "the primary purpose is to protect workers and to

6

prevent unfair competition in the market by companies who pay substandard wages." *BDK Indus.*, 296 B.R. at 170. Moreover, monetary damage awards can also serve a dual public policy purpose in addition to their obvious value to the employees; "should the DOL succeed in obtaining a money judgment against the defendant, such a judgment could deter unlawful behavior by others." *SCA Restaurant Corp.*, 463 B.R. at 254. As such, the automatic bankruptcy stay does not apply to this case and it should proceed notwithstanding Defendants' notice of bankruptcy.

## **CONCLUSION**

The Secretary of Labor's Motion to Proceed to Trial [116] is granted. A telephonic status hearing is set for May 17, 2021 at 2:00 p.m. Call in information is 888-684-8852 and the passcode is 1664086. Counsel shall dial in to the conference call number 5-10 minutes before the hearing begins and mute their microphones until their case is called.

**ENTERED:** May 10, 2021

_____
United States Magistrate Judge,
Susan E. Cox